IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH BUONAVOLANTO and M&I IMPORTS, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 12 C 6498 ) |
| FIFTH THIRD BANK and FIFTH THIRD EXCHANGE CORPORATION, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendants' Fifth Third Bank's and Fifth Third Exchange Corporation's Motion to Dismiss Plaintiffs' Joseph Buonavolanto's and M&I Imports, Inc.'s Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). For the following reasons, the Court denies the Motion.

**BACKGROUND**

For the purposes of the Motion, the Court accepts the following facts from Plaintiffs' Second Amended Complaint as true. On March 31, 2008, Lawrence Heisler leased a new 2009 Jaguar XF automobile (the "Jaguar") under a 36-month lease from automobile dealership Howard Orloff Imports, Inc. ("Orloff"). (R. 33, Second Amended Complaint ¶¶ 11-12 ("SAC").) Fifth Third Bank was the lessor and lienholder of the Jaguar. (*Id.* ¶ 13.) Fifth Third Exchange Corporation ("Fifth Third Exchange") is a subsidiary of Fifth Third Bank and holds title to vehicles that are subject to lease financing by Fifth Third Bank. (*Id.* ¶ 3.) On November 25, 2008, Heisler was involved in an accident with the Jaguar, which resulted in body and frame

damage to the vehicle. (*Id.* ¶ 15.) Subsequently, Heisler had the Jaguar repaired. The cost of repairs, including for body and frame damage, was approximately $14,628.84. (*Id.* ¶ 17.) Prior to the repairs, Heisler's insurer on the Jaguar, Ohio Casualty Insurance Company ("Ohio Casualty"), issued a check for the repairs. (*Id.* ¶ 19.)

In 2011, Heisler notified Fifth Third Bank that he intended to return the Jaguar rather than to purchase it. (*Id.* ¶ 21.) During a subsequent inspection of the vehicle with Heisler present, the inspector from Fifth Third Bank "observed that the Jaguar had sustained accident and frame damage" and "commented to Heisler" that he observed such damage. (*Id.* ¶ 24.) Subsequently, Defendants decided to sell the Jaguar at Manheim Auto Auction (the "Auction"), which Defendants had used before on numerous occasions. (*Id.* ¶¶ 26, 30.) Plaintiffs allege that Defendants were "familiar with the Auction's rules and requirements" prior to their decision to use its services to sell the Jaguar. (*Id.* ¶ 31.)

The Auction "uses a standardized light/video display system to describe the condition and/or disclosures" for vehicles offered for sale. (*Id.* ¶ 32.) The system displays either a green, yellow, red, or blue light for each vehicle offered for sale depending on the vehicle's condition. (*Id.* ¶ 33.) The Auction Rules specify that the "light/video display for a vehicle is a representation of the vehicle's condition" and that a seller "must ensure that the vehicle sells under the correct light." (*Id.* ¶¶ 34-35.) A green light indicates that a vehicle is in the "highest condition" or a "ride and drive" vehicle. (*Id.* ¶ 36.) Yellow, red, and blue lights, on the other hand, denote issues with the vehicle, including condition or title issues. (*Id.* ¶ 37.) The Auction allows buyers to purchase vehicles both at live auctions and online. One such option is the website Online Vehicle Exchange, www.ove.com, which permits online purchasing and does not

2

require an onsite party at the auction. (*Id.* ¶ 40.)

The Jaguar was listed for sale at www.ove.com as a "green light" vehicle. (*Id.* ¶ 44.) On April 15, 2011, Mr. Dmitriy Petrashko, a manager at M& I Imports, Inc. ("M&I Imports"), a licensed used card dealership, purchased the Jaguar at www.ove.com on behalf of M&I from Defendants through "C. Hawe," among others. (*Id.* ¶¶ 50, 51.) Petrashko "observed that the Jaguar was being offered for sale with a 'green light' designation" at www.ove.com. (*Id.* ¶ 46.) On or about May 27, 2011, Mr. Joseph Buonavolanto purchased the Jaguar from M&I without knowledge of its accident history. (*Id.* ¶ 69.)

Plaintiffs Joseph Buonavolanto and M&I filed suit against Defendants Fifth Third Bank and Fifth Third Exchange Corporation alleging Illinois common law fraud and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). (*Id.* ¶¶ 72-100.) Defendants now move to dismiss the Second Amended Complaint for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and 9(b) ("Rule 9(b)"). (R. 36, Defs.' Mot.)

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929

(2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

## II. Federal Rule of Civil Procedure 9(b)

In pleading fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). Specifically, Rule 9(b) requires a pleading to state with particularity the circumstances constituting the alleged fraud. *See* Fed. R. Civ. P. 9(b); *Pirelli*, 631 F.3d at 441-42. This requirement "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation omitted); *see also Pirelli*, 631 F.3d at 441-42. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "[T]he particularity requirement of Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli*, 631 F.3d at 441 (citation omitted).

4

**ANALYSIS**

In Count I, M&I brings a claim for common-law fraud against Defendants. In Count II, Mr. Buonavolanto contends that the same conduct violates the ICFA. Defendants argue that Plaintiffs' allegations fail under Rule 9(b) on three grounds:[1] (1) Plaintiffs fail to specifically allege what the "green light" designation means and why the Jaguar did not qualify, and thus the "green light" is not an actionable representation; (2) even if the misrepresentation is actionable, Mr. Buonavolanto is "too far removed from Fifth Third's actions" to satisfy proximate causation for an ICFA claim; and (3) M&I fails to adequately allege the "who" of the fraud under Rule 9(b).

**I.     Sufficiency of the Misrepresentation under Rule 9(b)**

As an initial matter, Defendants' arguments regarding Plaintiffs' failure to adequately allege the meaning of the green light designation or its falsity misconceives the purposes of Rule 9(b). "At the motion to dismiss stage, Rule 9(b) requires only that the plaintiff identify the alleged misrepresentations, not actually prove that the statement was false." *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 989 (N.D. Ill. 2010) (citing *Bankers Trust Co. v. Old Republic Ins., Co.*, 959 F.2d 677, 683 (7th Cir. 1992)). Here, Plaintiffs have identified the "green light" designation accompanying the Jaguar at its sale by Defendants through "C. Hawe" and other agents at the Manheim Auto Auction via www.ove.com on April

---

[1] Although Defendants couch their arguments within the heightened pleading framework of Rule 9(b), their challenges more accurately go to the issue of whether the alleged misrepresentation is sufficiently specific to be actionable as a matter of law rather than whether Plaintiffs have pled the fraud with sufficient particularity to give Defendants notice of their claims.

15, 2011 to M&I as the alleged misrepresentation regarding the condition of the vehicle. (SAC ¶¶ 44-51.) Furthermore, Plaintiffs allege that Fifth Third Bank "received notice of the accident damage history of the vehicle," and that the "green light" representation fraudulently induced M&I "to believe that it had purchased a good condition vehicle, with no accident damage history" and "for its fair market value at wholesale." (*Id.* ¶¶ 58, 60, 61.) This level of detail is sufficient to satisfy the particularity requirement for the representation under Rule 9(b). *See De Falco v. Vibram USA, Inc.*, No. 12 C 7238, 2013 WL 1122825, at *7 (N.D. Ill. Mar. 18, 2013) (statements regarding health benefits of "minimalist" shoes satisfied "what" requirement of Rule 9(b))*;Wright v. Nissan Motor Corp. in U.S.A.*, No. 96 C 8015, 1997 WL 106101, at *3 (N.D. Ill. Feb. 10, 1997) ("[T]his complaint completely fails the mandate of Rule 9(b) in failing to state basic particulars . . . such as the name of the dealer at which she purchased the vehicle, the name of the dealer at which she had the car serviced, and the name of the salesman who allegedly made the fraudulent statements.") Thus, Defendants' argument fails.

Nonetheless, to the extent Defendants contend that the "green light" designation lacks the specificity to constitute an actionable representation of fact under Illinois law, the Court will consider this argument separately below.

## II.  Common Law Fraud

### A.  Actionable Misrepresentation

M&I claims that Defendants intentionally misrepresented the nature of the Jaguar in designating the vehicle to be sold with a "green light" at the Auction based upon its accident history. (SAC ¶ 81.) In response, Defendants argue that the designation of the Jaguar as a "green light" vehicle is not an actionable representation of material fact. (R. 37, Defs.' Mem. 2.)

6

A claim for fraudulent misrepresentation under Illinois law requires the following elements: "(1) a false statement of material fact; (2) knowledge or belief of the falsity by the person making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance." *Jane Doe-3 v. McLean Cty. Unit Dist. No. 5 Bd. of Directors*, 2012 IL 112479, 973 N.E.2d 880, 889 (Ill. 2012). Under Illinois law, "[a] statement which is merely an expression of opinion or which relates to future or contingent events . . . ordinarily does not constitute an actionable misrepresentation." *Nettles-Bey v. Cars Collision Ctr., LLC*, No. 11 C 8022, 2013 WL 317047, at *10 (N.D. Ill. Jan. 25, 2013) (quoting *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993)).

Defendants' argument is unpersuasive for several reasons. First, Defendants fail to acknowledge that whether a representation is actionable under Illinois law depends upon the facts and circumstances of the case, including "whether a plaintiff reasonably relied on an opinion as though it were a statement of fact" given the parties' "access to outside information, "relative sophistication," and whether "the speaker has held himself out as having special knowledge." *Costello v. Grundon*, 651 F.3d 614, 639 (7th Cir. 2011). Here, M&I alleges that the Auction specified that the "light/video display for a vehicle is a representation of that vehicle's condition" and required sellers "to ensure that their vehicles sell under the correct light." (SAC ¶¶ 34-36.) Plaintiffs further allege that M&I purchased the Jaguar online, where the light designation is "especially important" because the buyer is unable to physically inspect vehicles in determining whether to purchase it at a given price. (*Id.* ¶¶ 41,42.) Viewing the allegations in the light most favorable to Plaintiffs, the Court cannot conclude at this stage that

7

M&I could not have justifiably relied upon the "green light" as a representation of particular facts about the vehicle. *Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 910-11 (N.D. Ill. 2006) (declining to dismiss allegations where court could not conclude that plaintiff did not rely on statements as if they were facts).

Nor can the Court conclude at this procedural posture that the posting of a "green light" with the vehicle at the Auction is too general or subjective to constitute an actionable representation of fact rather than mere "puffery." "Puffing denotes the exaggerations reasonably expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined." *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 73, 879 N.E.2d 910, 926 (2007); *Avery v. State Farm Mut. Auto. Ins.*, 216 Ill.2d 100, 174, 296 Ill. Dec. 448, 493, 835 N.E.2d 801, 846 (2005) ("Such statements include subjective descriptions relating to quality."); *Hanson-Suminski v. Rohrman Midwest Motors, Inc.*, 386 Ill. App. 3d 585, 594, 898 N.E.2d 194, 204 (Ill. App. Ct. 2008). Here, viewing the allegations in the light most favorable to M&I–that four different sets of lights are used to demonstrate the relative condition of the vehicle, that the Auction uses only one light per vehicle, and that Auction sellers are responsible for choosing the appropriate designation– raises the inference that each light refers to different and objectively verifiable criteria about each vehicle. (*Id.* ¶ 33.) Specifically, M&I alleges that the use of the green light induced M&I to falsely believe that the Jaguar was without "accident damage history" and to purchase it at its fair market value. (*Id.* ¶¶ 58, 60.) Thus, the asserted misrepresentation in the overall context of M&I's allegations is distinguishable from a description of product quality that is overly general or amounts to no more than a "meaningless superlative." *Barbara's Sales*, 227 Ill. 2d at 73 (noting a "general statement that one's products

8

are best is not actionable" (quoting *Avery*, 216 Ill. 2d at 174)); *Saltzman v. Pella Corp.*, No. 06 C 4481, 2007 WL 844883, at *4 (N.D. Ill. Mar. 20, 2007) (statements that windows were "durable" and "manufactured to high quality standards" were puffery); *Lefevbre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1363, 1366 (N.D. Ill 1996) (statements that a printing press could produce printing "in a commercially acceptable manner" were too "vague and general" to qualify as a statement of material fact).

  **B.** **"Who" of the Fraud**

  Defendants next argue that M&I has failed to adequately allege the "who" of its fraud claim to satisfy Rule 9(b). (Defs.' Mem. 10.) Defendants' reliance on *U.S. ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142 (N.D. Ill. 1993) is misplaced. There, the plaintiffs alleged merely that "Northrop employees" committed the fraud rather than identifying the specific employee or providing "at least a more specific description of each person." *See* 149 F.R.D. at 145. Here, Plaintiffs have identified "C. Hawe" as one of Defendants' alleged agents through whom it sold the Jaguar. In the context of M&I's allegations, which provide adequate detail regarding the "what," "when," "where," and "how" of the fraud, the identification of Defendants' agent is sufficient. *See San Francisco Tech., Inc v. Sunstar Ams., Inc.*, No. 10 C 5000, 2011 WL 291168, at *3 (N.D. Ill. Jan. 27, 2011) (noting the "who" of "Sunstar" was sufficient in context of allegations of Sunstar's falsely marked products). Plaintiffs have met their burden at this stage.

**III.** **ICFA Claim**

  In Count II, Mr. Buonavolanto alleges that Defendants engaged in "deceptive" and "unfair" conduct under the ICFA by "selling a leased vehicle at the Auction, knowing that there

was a substantial likelihood that a used car dealer would purchase the Jaguar for re-sale to a consumer and that the Jaguar would be represented to the consumer as a good condition vehicle." (SAC ¶¶ 87-89.) Defendants argue that Mr. Buonavolanto has failed to sufficiently allege proximate causation for an ICFA claim.

To state a claim under the ICFA, a plaintiff must allege the following: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012). The ICFA imposes the further requirements that the plaintiff suffer "actual damage" and that "the damage occurred 'as a result of' the deceptive act or practice." *Barbara's Sales*, 227 Ill. 2d at 72. In an action based upon a fraudulent misrepresentation, "a plaintiff must [show] that he or she was actually deceived by the misrepresentation in order to establish the elements of proximate causation." *Martinez v. River Park Place, LLC*, 2012 IL App (1st) 111478, 366 Ill. Dec. 848, 860, 980 N.E.2d 1207, 1219 (Ill. App. Ct. 2012) (quoting *Avery*, 216 Ill. 2d at 199).

Defendants' argument that Mr. Buonavolanto fails to sufficiently allege proximate cause because Mr. Buonavolanto lacked direct contact with Defendants fails. (Defs.' Mem. 7.) In *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517, 525-26, 805 N.E.2d 213, 218 (2004), the Illinois Supreme Court rejected the argument that "deception must always be direct between the defendant and the plaintiff to satisfy the requirement of proximate cause under the [ICFA]" in the context of an ICFA claim based upon deceptive advertising. *Shannon*, 208 Ill. 2d at 525-26 (noting that "traditional privity [is] not a requirement in fraud actions" and that it is sufficient

10

that "the statements by the defendant be made with the intention that it reach the plaintiff and influence his action and that it does reach him and that he does rely upon it" (citing *St. Joseph Hosp. v. Corbetta Constr. Co.*, 21 Ill. App. 3d 925, 316 N.E.2d 51 (1974)). Rather, in *Shannon*, the Illinois Supreme Court concluded that in the context of a plaintiff claiming damages for defective siding in his home, the plaintiff could satisfy the requirement if "the product literature had in fact deceived a particular builder, architect, or contractor, resulting in the installation of defective siding on a home" because the plaintiff "is deceived because of the deception of the builder, architect or contractor, who reasonably should have had correct knowledge." *Id.* Here, Plaintiffs have similarly alleged that Defendants' representation that the Jaguar was a "green light" vehicle deceived both M&I and Mr. Buonavolanto. *See id.* at 528 (noting in rejecting plaintiffs' proximate cause argument the lack of allegations that "builders or others involved in the construction or marketing of their homes were deceived"). Morever, contrary to Defendants' argument, *Oliveira v. Amoco*, 201 Ill. 2d 134, 776 N.E.2d 151 (2002), does not require a different result. In *Oliveira*, the Illinois Supreme Court rejected the plaintiff's proximate causation rationale based not upon allegations of actual deception as here but the plaintiff's "market theory," by which a purchaser "who saw the ads [for gasoline] but never believed them" could prevail. *Oliveira*, 201 Ill. 2d at 154 (noting the plaintiff failed to allege that he was "in any manner, deceived by defendant's advertisements" or "that he received anything other than what he expected to receive"). Defendants' argument is without merit.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' Motion.

**DATED: April 17, 2013**

        **ENTERED**

        _____
        **AMY J. ST. EVE**
        **United States District Court Judge**